# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| TINA WILLIAMS, | ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 4:13-0347-CV-W-DGK |
| CITY OF KANSAS CITY, MISSOURI and GREG QUEEN, | ) ) ) ) |
| Defendants. | ) ) |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS

This case arises from Plaintiff Tina William's employment as a maintenance worker with the Kansas City Department of Water Services. Plaintiff alleges that while employed by Defendant City of Kansas City, Missouri, (the "City"), fellow co-workers racially harassed her and Defendant Greg Queen ("Queen") retaliated against her for complaining about the harassment, all in violation of the Missouri Human Rights Act ("MHRA") and 42 U.S.C. § 1983. Now before the Court is Defendants' motion for judgment on the pleadings (Doc. 23). For the reasons discussed below, the motion is GRANTED IN PART and DENIED IN PART, and the case is remanded to the Circuit Court of Jackson County, Missouri, pursuant to 28 U.S.C. § 1367(c).

## Factual and Procedural Background

**A. Allegations contained in the Complaint and record documents.**

The Court presents the following facts in the light most favorable to Plaintiff. Plaintiff, who is African-American, began working for the Kansas City Department of Water Services in 1997. While working in this position in 2009, Plaintiff received several anonymous packages in

the interoffice mail containing offensive comments, including statements such as "Find another job" and "What's happening Bitch." Plaintiff reported the incidents to her then-supervisor Curtis Braden and to the human resources department (the "H.R. Department"). The H.R. Department did not interview Plaintiff following this initial complaint.

Nearly two years after the incident, an unspecified fellow co-worker followed up about the investigation. Shortly thereafter, the H.R. Department interviewed Plaintiff about the alleged incidents. During the interview and subsequent investigation, the H.R. Department learned that Plaintiff conducted her own informal investigation to determine the culprit behind the packages. The H.R. Department then informed Defendant Queen, who was Acting Division Manager of the Kansas City Water Services Department, about Plaintiff's actions. Subsequently, Queen cited Plaintiff for allegedly violating office policies by conducting the investigation.[1]

Sometime in 2011, a fellow employee of another race, Susan Palacio ("Palacio"), began harassing Plaintiff. Palacio sent Plaintiff intimidating emails, and, on one occasion, she intentionally bumped into Plaintiff in the hallway. This alleged harassment continued until Palacio retired in December 2011. Throughout the period of harassment, Plaintiff filed complaints with the H.R. Department, but it did not investigate her allegations. During this same time period, Queen attempted to cite Plaintiff for several other workplace violations.

At all times relevant to this lawsuit, the City had direct control over the H.R. Department. Either City officials or the H.R. Department promulgated an anti-harassment policy. This policy required the H.R. Department to investigate all claims of workplace harassment and

---

[1] The Court gleaned several of the facts contained in this paragraph from the reprimand form attached to Defendants' answer. As this reprimand is explicitly discussed in the Complaint, the Court finds that it is necessarily embraced by the pleadings, thus the Court considers it in ruling upon the current motion. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999).

discrimination. Despite this policy, Plaintiff alleges that the H.R. Department ignored her complaints.

**B. Plaintiff's filing of the charge of discrimination and subsequent lawsuit.**

On January 18, 2012, Plaintiff filed a charge of discrimination (the "Charge") with the Missouri Commission on Human Rights ("MCHR"). In the Charge, Plaintiff alleged that she was harassed by fellow co-workers because of her race, and that she was reprimanded because of her race and in retaliation for filing complaints with the H.R. Department. The form also included several check-marked boxes identifying the types of alleged violations. By checking certain boxes, Plaintiff indicated that her discrimination was based upon race, retaliation, and harassment. Although Plaintiff specified the earliest and latest dates of discrimination as January 1, 2009 and June 10, 2011 respectively, she also marked a box that stated the discrimination was a "continuing action."

The Charge also included a short narrative of the factual basis for her allegations. Plaintiff alleged that in 2009 she received several packages containing "insulting comments." She stated that she "believed" an employee of another race sent the packages, and that other African-American employees received similar packages. Around this same time, this same co-worker also allegedly placed anonymous phone calls to the H.R. Department hotline and made false accusations against her. She also mentioned the reprimand she received for investigating the incidents. The Charge, however, contained no information regarding the harassment by Palacio or Queen's attempt to levy additional work citations against her.

After filing the Charge, Plaintiff filed suit in the Circuit Court of Jackson County, Missouri, against the City and Queen, alleging retaliation and hostile work environment claims under the MHRA and a claim for "nonfeasance" for the H.R. Department's failure to investigate

3

her harassment claims. On March 28, 2013, Plaintiff amended her complaint to include four § 1983 claims and a claim for intentional infliction of emotional distress.

Thereafter, on April 8, 2013, Defendants removed the case to this Court, alleging jurisdiction pursuant to 28 U.S.C. §§ 1331, 1441(a). Plaintiff later filed an amended complaint (the "Complaint") on October 31, 2013. The Complaint contains four counts: (1) a MHRA retaliation claim, (2) a MHRA hostile work environment claim, (3) a § 1983 claim for the City's failure to protect Plaintiff from workplace harassment, and (4) a § 1983 claim for the City's intentional racial discrimination against Plaintiff. On April 25, 2014, Defendant filed the instant motion for judgment on the pleadings, seeking dismissal of all counts.

## Standard

After the pleadings have closed, a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). When ruling on a motion for judgment on the pleadings, the court must "accept as true all factual allegations set out in the complaint and construe the complaint in the light most favorable to the plaintiff, drawing all inferences in [her] favor." *Ashley Cnty., Ark. v. Pfizer, Inc.*, 552 F.3d 659, 665 (8th Cir. 2009) (internal quotation marks and citation omitted). Much like the court's review under Rule 12(b)(6), "[j]udgment on the pleadings is appropriate only when there is no dispute as to any material facts and the moving party is entitled to judgment as a matter of law." *Id.* (internal quotation marks and citation omitted). Accordingly, the Court typically ignores all materials outside the pleadings, with the exception of public records, documents attached to or embraced by the pleadings, and other documents in the record. *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999) (citations omitted).

A motion under 12(c) that challenges the sufficiency of the pleadings requires the Court to apply the 12(b)(6) standards. *Ashley Cnty., Ark.*, 552 F.3d at 665. To survive a 12(b)(6)

motion to dismiss, the complaint must do more than recite the bare elements of a cause of action. *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). Rather, it must include "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "While a complaint ... does not need detailed factual allegations," a plaintiff must provide the grounds of his entitlement with more than mere "labels and conclusions," or "a formulaic recitation of the elements of a cause of action…." *Benton v. Merrill Lynch & Co., Inc.,* 524 F.3d 866, 870 (8th Cir. 2008) (quoting *Twombly*, 550 U.S. at 555 (internal citations omitted)). A complaint that alleges only "naked assertion[s] devoid of 'further factual enhancement'" will not survive a motion to dismiss. *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 557).

## Discussion

Defendants posit several bases for judgment on the pleadings. With respect to Plaintiff's MHRA claims, Defendants contend that these claims are barred because Plaintiff failed to timely and properly exhaust her administrative remedies.[2] As for her § 1983 claims, Defendants request the Court dismiss Counts Three and Four for failure to state a claim. The Court addresses the viability of the § 1983 claims first, because this issue impacts whether the Court should rule upon Defendants' MHRA defenses.

### I. Plaintiff fails to state claims for municipal liability under Counts Three and Four.

Defendants contend that the Court must dismiss Counts Three and Four because neither states a claim for municipal liability under 42 U.S.C. § 1983. In these counts, Plaintiff raises two claims against the City and Queen for violations of the Equal Protection Clause of the Fourteenth Amendment. Because Plaintiff is suing Queen in his official capacity, the Court treats these two

---

[2] Defendants do not challenge the MHRA claims on 12(b)(6) grounds.

claims as ones solely against the City. *Hess v. Ables*, 714 F.3d 1048, 1054 (8th Cir. 2013) (noting that suing a municipal employee in his official capacity is the same as suing the municipality itself).

To state a § 1983 claim, a plaintiff must plead "(1) that the defendant(s) acted under color of state law, and (2) that the alleged wrongful conduct deprived the plaintiff of a constitutionally protected federal right." *Schmidt v. City of Bella Villa*, 557 F.3d 564, 571 (8th Cir. 2009). A municipality is only liable under § 1983 if the plaintiff demonstrates that a municipality's "policy or custom caused a plaintiff to be deprived of a federal right." *Alexander v. Hedback*, 718 F.3d 762, 766 (8th Cir. 2013). A policy may either arise from a municipality's official promulgation, or through a single act by a decision-maker "who possesses final authority to establish municipal policy with respect to the action ordered." *Davison v. City of Minneapolis, Minn.*, 490 F.3d 648, 659 (8th Cir. 2007). To demonstrate a custom, a plaintiff must show:

(1) The existence of a continuing, widespread, persistent pattern of unconstitutional misconduct by the governmental entity's employees;
(2) Deliberate indifference to or tacit authorization of such conduct by the governmental entity's policymaking officials after notice to the officials of that misconduct; and
(3) The plaintiff's injury by acts pursuant to the governmental entity's custom, i.e., that the custom was the moving force behind the constitutional violation.

*Johnson v. Douglas Cnty. Med. Dep't*, 725 F.3d 825, 828 (8th Cir. 2013).

**A. Count Three fails to allege that the City deprived Plaintiff of a constitutional right.**

Although the precise basis of Plaintiff's claims are difficult to discern, it appears that the Complaint alleges two slightly different claims for municipal liability. Count Three alleges that the City has an official policy requiring the H.R. Department to investigate all harassment

complaints, and despite this policy, the City had a custom of ignoring harassment complaints which caused Plaintiff to be subjected to continual racial harassment by co-workers.

Even assuming that a custom of ignoring harassment complaints existed, Plaintiff has failed to allege that the policy deprived her of a constitutional right. The precise legal theory of the constitutional deprivation alleged in Count Three is unclear, and neither party's briefing provides any clarification. It appears to the Court that Plaintiff is claiming a racially hostile work environment. Although a race-based hostile work environment claim is a cognizable cause of action under § 1983, *cf. Wright v. Rolette Cnty.*, 417 F.3d 879, 884 (8th Cir. 2005), a plaintiff must still allege enough facts to make such a claim plausible. *See Hager v. Ark. Dep't of Health*, 735 F.3d 1009, 1015 (8th Cir. 2013) (noting that to state a claim under 42 U.S.C. § 1983, the plaintiff must assert enough facts to raise the "right to relief above the speculative level."). This requires the plaintiff to allege sufficient factual detail for the Court to conclude that: "(1) he or she belonged to a protected group; (2) he or she was subjected to unwelcome harassment; (3) the harassment was based upon race; (4) the harassment affected a term, condition, or privilege of his or her employment; and (5) the employer knew or should have known of the harassment and failed to take proper remedial action." *Blakley v. Schlumberger Tech. Corp.*, 648 F.3d 921, 933 (8th Cir. 2011).

Here, Plaintiff has failed to allege enough facts to satisfy the third and fourth elements. Although Plaintiff asserts a legal conclusion in Count Three that she was subjected to racial harassment, she provides no factual allegations in the count showing that the harassment was racially motivated. And the preceding sections of the Complaint do not factually enhance this legal conclusion. Granted, Plaintiff alleges she received "harassing" mail from co-workers which included insensitive comments, but none of the comments were racially derogatory. *See*

*Martin v. Craig*, No. 12-cv-1057, 2014 WL 1266833, at *5 (W.D. Ark. Mar. 26, 2014) (noting that the lack of racially derogatory comments cuts against a plaintiff's claims of a racially hostile work environment); *see also Hager*, 735 F.3d at 1015 (holding that a plaintiff raising an equal protection claim for gender discrimination under § 1983 failed to state a claim partially because she did "not allege any gender-related comments or conduct before her termination."). The fact that Plaintiff "believed" that the person sending the email was of another race and that other African-American employees received similar packages is not enough to plausibly show that these comments derived from her co-worker's racial animus. *See Anderson v. Durham D & M, L.L.C.*, 606 F.3d 513, 519 (8th Cir. 2010) (a plaintiff cannot rely upon speculation and conjecture that offensive comments are racially motivated). As for the conduct of her co-worker Susan Palacio, aside from a cursory allegation that she was of a different race than Plaintiff, she fails to allege any facts suggesting that Palacio's "harassing and intimidating emails" were racially motivated. In short, the Complaint and embraced documents fail to provide enough factual detail for the Court to plausibly infer that the harassment was race-based.

Similarly, the pleadings fall short of plausibly demonstrating that the harassment affected a term or condition of employment. To constitute a term or condition of employment, "[t]he workplace must be permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe and pervasive." *Anderson*, 606 F.3d at 518 (internal quotation marks omitted). "Simple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Id*. (internal quotation marks omitted).

Here, Plaintiff only alleges two isolated periods of harassment, with one in 2009 and another at some point in 2011. And while she does suggest that during these periods her co-

workers made some rude and offensive comments to her, she does not allege enough facts to suggest that these comments were pervasive or severe enough to permeate the workplace. *See Eccles v. Dep't of Elementary & Secondary Educ. for. Mo.*, 06-0165-CV-W-FJG, 2006 WL 2788516, at *2 (W.D. Mo. Sept. 26, 2006) ("Anti-discrimination laws are not codes of civility in the workplace and [c]onduct that is merely rude, abrasive, unkind, or insensitive does not come within the scope of the law." (quoting *Clark v. St. Louis Pub. Schs.*, No. 05-cv-1299-SNL, 2006 WL 208600, at *5 (E.D. Mo. Jan. 25, 2006)); *see also Al-Zubaidy v. TEK Indus., Inc.*, 406 F.3d 1030, 1039 (8th Cir. 2005) ("The [Supreme] Court implores lower courts to apply the demanding harassment standards to 'filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, gender-related jokes, and occasional teasing.'" (quoting *Oncale v. Sudowner Offshore Servs., Inc.*, 523 U.S. 75, 81 (1998)). Accordingly, Plaintiff fails to plead a constitutional deprivation in the form of a racially hostile work environment. *See Veatch v. Bartels Lutheran Home*, 627 F.3d 1254, 1257 (8th Cir. 2010) (citing *City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986)) (noting that municipal liability only attaches when the plaintiff shows an underlying constitutional violation).

To the extent that the Complaint alleges that the policy led to "intentional discrimination" in violation of the Equal Protection Clause, it still fails to state a claim. Aside from the legal conclusion that the City "intentionally discriminated" against Plaintiff, the Complaint lacks any facts suggesting that the City harbored a racially discriminatory purpose when it ignored her complaints. *See Foster v. Wyrick*, 823 F.2d 218, 221 (8th Cir. 1987) ("Proof of discriminatory racial purpose is required to establish an equal protection violation; an official act is not unconstitutional solely because it has a racially disproportionate impact."). Consequently, regardless of whether the city had a policy or custom of not responding to complaints of

9

harassment, Plaintiff fails to allege the requisite constitutional deprivation to support a claim for municipal liability under Count Three.

**B. Count Four fails to allege that the City deprived her of a constitutional right.**

Under Count Four, Plaintiff alleges that the City's policy requiring investigation of all harassment claims was selectively not applied to her because of her race.

Count Four suffers from the same pleading infirmity as Count Three. Even assuming the City had either a policy or custom of applying its harassment policy unequally, Plaintiff has not alleged that the policy resulted in a constitutional deprivation. *See Veatch*, 627 F.3d at 1257. To state a claim for unequal treatment under the Fourteenth Amendment, a plaintiff must demonstrate that she was treated different than similarly situated employees. *See Bogren v. Minn.*, 236 F.3d 399, 407 (8th Cir. 2000) ("Bogren must as a threshold matter demonstrate that Fraser, Hodapp and Mengelkoch treated her less favorably than similarly-situated troopers on account of her membership in a protected class."). The Complaint is devoid of any allegations suggesting that the City investigated harassment complaints from similarly situated employees of another race. Her failure to make this threshold showing is fatal to her second claim of municipal liability.

Rather than address this deficiency, Plaintiff cites to *Ricketts v. City of Columbia, Mo.*, 36 F.3d 775 (8th Cir. 1994), and she contends that Count Four should survive because the City cannot unequally apply its protective services. In *Ricketts*, the Eighth Circuit held that there is a cognizable § 1983 claim when a city has a custom or practice of providing less police protection to female victims of domestic abuse than it does for other similarly situated crime victims. 36 F.3d at 779. Assuming for the sake of argument that *Ricketts* applies in the present case, Plaintiff has failed to allege enough facts to make such a claim plausible. To state a viable *Ricketts* claim,

a plaintiff must allege that municipality's custom or practice is motivated by a discriminatory purpose. *See Ricketts*, 36 F.3d at 781. Aside from the legal conclusion that the city "intentionally discriminated" against Plaintiff on the basis of the race, she provides no factual details to suggest a discriminatory purpose behind the City's alleged failure to investigate her claims of harassment.

Due to the Complaint's various pleading deficiencies, Defendants are entitled to judgment on the pleadings on Counts Three and Four.[3]

## II. The Court remands this case to the Circuit Court of Jackson County, Missouri.

The granting of judgment on the pleadings on Counts Three and Four raises a jurisdictional issue that the Court must address. After Plaintiff amended her complaint in state court to add the § 1983 claims, Defendants removed to this Court pursuant to 28 U.S.C. §§ 1331, 1441(a). The Court subsequently exercised its supplemental jurisdiction over the MHRA claims raised in Counts One and Two. Since the Court has granted judgment on the claims which conferred federal jurisdiction, the Court must now decide whether it should remand the state law claims. The Court finds that it should.

Under 28 U.S.C. § 1367, a district court may decline to exercise continued supplemental jurisdiction over a state law claim if the district court already "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). A presumption in favor of dismissal arises when the "resolution of the remaining claims depends solely on a determination of state law…." *Glorvigen v. Cirrus Design Corp.*, 581 F.3d 737, 749 (8th Cir. 2009) (internal quotation marks

---

[3] Even if Plaintiff pled enough facts to show a constitutional deprivation under either count, the Court would still dismiss the claims for failure to allege a policy or custom. Besides identifying the City's anti-harassment policy and asserting the legal conclusion that it was unconstitutionally deficient, Plaintiff fails to provide enough factual detail for the Court to reasonably infer that the policy was facially unconstitutional or that it was unconstitutional as applied. *See Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 390 (8th Cir. 2007) (explaining the difference in elements for challenging a municipal policy as facially unconstitutional versus unconstitutional as applied). Nor does she satisfy the necessary elements to effectively plead that the City employed an unconstitutional custom. *See Johnson*, 725 F.3d at 828 (setting out the elements for municipal liability based upon the custom theory).

omitted). Despite this presumption, a court must nonetheless consider a multitude of factors, including "judicial economy, convenience, fairness, and comity." *See id.* (internal quotation marks and citation omitted) (suggesting the court should still consider other factors despite the presumption in favor of remand).

Here, the factors weigh in favor of remand. The remaining claims arise under the MHRA. Although certain provisions of the MHRA are similar to the standards under Title VII, *Brady v. Curators of Univ. of Mo.*, 213 S.W.3d 101, 112 (Mo. Ct. App. 2006), Missouri courts primarily focus upon the plain language of the MHRA in resolving claims arising under it. *See Daugherty v. City of Maryland Heights*, 231 S.W.3d 814, 819 (Mo. 2007) (noting that interpretations of the MHRA should focus more on the plain language of the statute and less on the interpretation of federal law). Thus, the remaining issues almost exclusively involve the interpretation of state, not federal law.

Considerations of judicial economy also favor remand in this instance. Aside from ruling upon this motion and a previous motion, this Court has expended relatively little time and effort in adjudicating this matter. Moreover, because the Court's previous orders dealt solely with federal procedural law, the Court has relatively little familiarity with MHRA claims asserted in this action.

Similarly, remand at this juncture is not unduly inconvenient or unfair. While the current trial date is less than one month away, the parties have not invested much time or effort litigating in this forum or preparing for trial. Since removal in April 2013, the parties have only conducted basic discovery obligations, including proposing a scheduling order and serving their Rule 26 disclosures. The parties have not conducted a deposition or engaged in any other meaningful discovery such as interrogatories, and they have only filed three substantive motions. Although

the parties have filed witness lists and exhibit lists, the Court has not conducted the pretrial conference, so final trial preparation has yet to commence. Given this record of limited activity, the parties will only suffer minor inconvenience from the Court remanding the case to state court.

The interests of comity also favor remanding the case to state court. As alluded to earlier, the remaining claims involve the interpretation of state, not federal law, and this favors remanding to a court with a special familiarity with Missouri law. And aside from the general familiarity with the MHRA, the Circuit Court of Jackson County already has particularized knowledge of this case as the parties litigated in that forum for nearly a year prior to removal.

Since the relevant law and factors suggest remand is the most appropriate option in this situation, the Court exercises its discretion pursuant to 28 U.S.C. § 1367(c) to remand this case to the Circuit Court of Jackson County, Missouri.

### III. The Court denies Defendants' request for judgment on the pleadings for Counts One and Two.

Because the Court declines to exercise supplemental jurisdiction over the MHRA claims and remands the case to state court, Defendants' motion for judgment on the pleadings on Counts One and Two is denied as moot.

### Conclusion

For the foregoing reasons, Defendants' motion for judgment on the pleadings (Doc. 23) is GRANTED IN PART and DENIED IN PART. Defendants are granted judgment on the pleadings with respect to Counts Three and Four. Because federal jurisdiction depended on the viability of these counts, the Court also exercises its discretion to remand the case to the Circuit Court of Jackson County, Missouri for all further proceedings.

**IT IS SO ORDERED.**

Date:  May 23, 2014                          /s/ Greg Kays
                                             GREG KAYS, CHIEF JUDGE
                                             UNITED STATES DISTRICT COURT